Andrew Gerber (AG 0779)
Jordan Fletcher (JF 6161)

KUSHNIRSKY GERBER PLLC
27 Union Square West, Suite 301
New York, NY 10003
(212) 882-1320
*Attorneys for Plaintiffs Sean Aaberg, Kristina Alderette,*
*Brianna Bulski, Susan Ghahremani, Anita Ivancenko,*
*Thais Marchese, Eleanor Mortimer, Eric Solomon,*
*Caitlin Whittington, Beth Wilson, and Katharine Wilson*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

| | |
|---|---|
| SEAN AABERG, KRISTINA ALDERETTE, BRIANNA BULSKI, SUSAN GHAHREMANI, ANITA IVANCENKO, THAIS MARCHESE, ELEANOR MORTIMER, ERIC SOLOMON, CAITLIN WHITTINGTON, BETH WILSON, and KATHARINE WILSON, | Case No. **COMPLAINT** |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| FRANCESCA'S COLLECTIONS, INC., O.K. ORIGINALS, LTD. ORION FASHIONS, INC., AND DOES 1-10, | |
| Defendants. | |

_____

Plaintiffs Sean Aaberg, Kristina Alderette, Brianna Bulski, Susan Ghahremani, Anita Ivancenko, Thais Marchese, Eleanor Mortimer, Eric Solomon, Caitlin Whittington, Beth Wilson, and Katharine Wilson (together, the "Plaintiff Artists") by their attorneys Kushnirsky Gerber PLLC, for their complaint against defendants Francesca's Collections, Inc. ("Francesca's"), O.K. Originals, Ltd. ("O.K. Originals"), Orion Fashions, Inc. ("Orion") and Does 1-10 (together, "Defendants") allege as follows:

## NATURE OF THE ACTION

1.      Once a ubiquitous fashion accessory, enamel pins are experiencing a major resurgence in popularity.  Thanks to a current wave of nostalgia for the 1990s and the ease of direct-to-consumer sales via the internet, enamel pins are again one of the hottest trends in fashion. Pin consumers and collectors often wait hours in line for pins and spend upwards of $20 for a single pin.  W Magazine recently observed that the enamel pin craze has "reached Kim Kardashian levels."[1]   Capitalizing on this popularity, many major retailers have begun selling pins both in stores and online.

2.      Plaintiff Artists are artists who operate independently to create and sell enamel pins of their own original design.  For many, this is their primary source of income.

3.      Defendant Francesca's is a retail company that sells accessories, jewelry, and clothing through its website and a nationwide chain of approximately 620 retail locations throughout the United States.  In 2015, Francesca's generated over $430 million in revenue, with gross profits exceeding $200 million.

4.      Seeking to capitalize on the current trend, Francesca's began selling enamel pins in July 2016.  However, rather than design its own original pins or purchase or license designs directly from artists, Francesca's chose to steal Plaintiff Artists' existing designs.  Francesca's contracted with O.K. Originals and Orion, both notorious distributors of knockoff and copycat goods, to supply Francesca's with infringing copies of Plaintiff Artists' pins.  The infringing pins are pictured below alongside Plaintiff Artists' original pins from which they were copied.

---

[1] "How The Enamel Pin Craze Reached Kim Kardashian Levels", http://www.wmagazine.com/story/how-the-enamel-pin-craze-reached-kim-kardashian-levels.



COMPARISON CHART

5.     Despite being repeatedly confronted with its unlawful conduct, Francesca's chose to ignore Plaintiff Artists' concerns and continued to sell these infringing pins unabated while Francesca's employees and representatives publicly lied about the infringement and Francesca's involvement therein.

6.      Plaintiff Artists assert claims for copyright infringement under the United States Copyright Act, 17 U.S.C. § 101, *et seq*. (the "Copyright Act"); removal of copyright management information under the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.* (the "DMCA"); unfair competition under the Lanham Act, New York G.B.L. § 349, and common law; mail fraud; and wire fraud.  They seek actual damages, punitive damages, and injunctive relief.

## JURISDICTION AND VENUE

7.      This is an action for copyright infringement under the Copyright Act, removal of copyright management information under 17 U.S.C. § 1202(b), distribution and importation of false copyright management information under 17 U.S.C. § 1202(a), unfair competition under the Lanham Act and New York law, and violations of federal mail and wire fraud statutes.  The Court has subject matter jurisdiction pursuant to 17 U.S.C. § 501 and 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

8.      The Court has personal jurisdiction over all Defendants pursuant to N.Y. C.P.L.R. §§ 301 and 302.

9.      Francesca's is a corporation that does continuous and systematic business in New York and in this District and maintains several retail locations herein.  Francesca's has transacted business in New York and contracted to supply goods or services in New York in connection with the matters giving rise to this lawsuit.  It has also committed acts outside of New York that caused injury to Plaintiffs within New York; regularly does or solicits business in New York; derives substantial revenue from goods used or services rendered in New York; expects or reasonably should expect its infringing conduct to have consequences in New York; and derives substantial revenue from interstate commerce.

10.     Defendant O.K. Originals, Ltd. is a corporation organized and existing under the laws of the State of New York, with its principal place of business located at 389 Fifth Avenue, Suite 800, New York, New York 10016, and is doing business in and with the State of New York.

11.     Defendant Orion Fashions, Inc. is a corporation organized and existing under the laws of the State of New York, with its principal place of business located at 48 West 38th Street, New York, New York 10018, and is doing business in and with the State of New York.

12.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400 because Defendants do business, may be found, and are subject to personal jurisdiction here.

## PARTIES

13.     Plaintiff Sean Aaberg is an individual residing in Portland, Oregon.

14.     Plaintiff Kristina Alderette is an individual residing in San Jose, California.

15.     Plaintiff Brianna Bulski is an individual residing in Eugene, Oregon.

16.     Plaintiff Susan Ghahremani is an individual residing in San Diego, California.

17.     Plaintiff Anita Ivancenko is an individual residing in Rugeley, United Kingdom.

18.     Plaintiff Thais Marchese is an individual residing in Seattle, Washington.

19.     Plaintiff Eleanor Mortimer is an individual residing in Nottingham, United Kingdom.

20.     Plaintiff Eric Solomon is an individual residing in Houston, Texas.

21.     Plaintiff Caitlin Whittington is an individual residing in Brooklyn, New York.

22.     Plaintiff Beth Wilson is an individual residing in Portishead, United Kingdom.

23.     Plaintiff Katharine Wilson is an individual residing in Los Angeles, California.

24.     Plaintiff Artists own the respective copyrights for the original pins at issue in this action and have satisfied the requirements of 17 U.S.C. § 411 prior to filing this Complaint.  The respective titles of the pins are: Dill With It! Enamel Pin, Boston Terrier Lapel Pin, Rotary Dial

Telephone Pin, Cat Lady Pin, Bowtie Cat Enamel Pin, Pastel Strawberry Pin, Pizza True Love Enamel Pin, Moody Kitty Pin, Donut Enamel Pin, Banana Split Enamel Pin, Orange Enamel Cat Pin, Pixie Enamel Cat Pin, and Best Babes Pin + Post.

25.     Defendant Francesca's is a subsidiary of the publicly-traded corporation Francesca's Holding Corporation and is organized and existing under the laws of the State of Texas with its principal place of business in Houston, Texas.  Francesca's is one of the fastest growing specialty retailers in the United States and currently operates approximately 620 retail locations throughout the United States with plans to eventually operate 900 locations nationwide.  In 2015, Francesca's generated over $430 million in revenue, with gross profits exceeding $200 million.  Francesca's website states that it is "committed to conducting [its] business in a responsible, ethical and lawful manner."

26.     Defendant O.K. Originals, Ltd. is a corporation organized and existing under the laws of the State of New York with its principal place of business in New York, New York.  On information and belief, O.K. Originals' business consists mainly of importing costume jewelry manufactured in Asia.

27.     Defendant Orion Fashions, Inc. is a corporation organized and existing under the laws of the State of New York with its principal place of business in New York, New York.  On information and belief, Orion's business consists mainly of jewelry importation.

28.     Defendants Does 1-10 are entities whose identities are unknown to Plaintiff Artists at this time.  In connection with the named Defendants and their activities described herein, Does 1-10 have designed, manufactured, distributed, advertised, offered for sale and/or sold infringing copies and unauthorized derivative works of Plaintiff Artists' pins, and continue to do so.  Plaintiff Artists believe that information obtained in discovery will lead to the identification of the true

identities and locations of Does 1-10 and permit Plaintiff Artists to amend this Complaint and to state the same.

## FACTUAL BACKGROUND

### I.   Plaintiff Artists and Their Enamel Pins

29.   Plaintiff Artists are independent artists who create and sell original artwork and products featuring their original artwork.  Each creates and sells enamel pins of their own original design (the "Original Pins"), and many routinely license their designs to retailers.  For many of the Plaintiff Artists, these sales and licenses are their sole source of income.

30.   Plaintiff Sean Aaberg is the artist behind the brand Goblinko. Mr. Aaberg sells original patches, pins, clothing, games, and stickers, and other products through his website at www.goblinkomegamall.com and through various third-party websites and retailers.  Mr. Aaberg sells numerous enamel pins, including the Dill With It! Enamel Pin, shown below.  Copyright management information consisting of, *inter alia*, Mr. Aaberg's trade name and logo is included on the pin's packaging.



31.   Plaintiff Kristina Alderette is an illustrator and graphic designer who sells original enamel pins through her storefront on Etsy. Ms. Alderette's Boston Terrier Lapel Pin is shown below. Copyright management information consisting of, *inter alia*, Ms. Alderette's name, logo, and website address is included on the back of the pin and on the pin's packaging.



32.     Plaintiff Brianna Bulski is the artist behind the brand Little Arrow. Ms. Bulski sells original enamel pins, patches, jewelry, cards, clothing, and other products through her website at www.littlearrowstudio.com and through various third-party websites and retailers across the United States.  Ms. Bulski sells dozens of enamel pins, including her Rotary Dial Telephone Pin and Cat Lady Pin, shown below.  Copyright management information consisting of, *inter alia*, Ms. Bulski's trade name, logo, website address, and social media handles is included on the pin's packaging.



33.     Plaintiff Susan Ghahremani is the artist behind the brand Boygirlparty. Ms Ghahremani sells original artwork, paper goods, clothing, accessories, and other products through her website at www.boygirlparty.com, her Etsy storefront, and thousands of retail locations throughout the United States.  Ms. Ghahremani sells dozens of original enamel pins, including the Bowtie Cat Enamel Pin, pictured below.  Copyright management information consisting of, *inter alia*, Ms. Ghahremani's name, trade name, and website address is included on the back of the pin and on the pin's packaging.

8



34.     Plaintiff Anita Ivancenko is the artist behind the brand Pardon My Tone. Ms. Ivancenko sells original enamel pins, stickers, phone cases, and other products through her storefronts on Etsy and Tictail.  Ms. Ivancenko's Pastel Strawberry Pin is shown below.  Copyright management information consisting of, *inter alia*, Ms. Ivancenko's trade name, logo, and website address, is included on the pin's packaging.



35.     Plaintiff Thais Marchese is the artist behind the brand Sleepy Mountain. Ms. Marchese sells original earrings, buttons, enamel pins, and other products through her website at www.sleepymountain.com and through various third-party websites and retailers. Ms. Marchese sells numerous original enamel pins, including the Pizza True Love Enamel Pin, pictured below. Copyright management information consisting of, *inter alia*, Ms. Marchese's trade name, logo, and website address, is included on the back of the pin and on the pin's packaging.



36.     Plaintiff Eleanor Mortimer is the artist behind the brand Cousins Collective.  Ms. Mortimer sells original jewelry, bags, patches, enamel pins, and other products through her storefront on Etsy.  Ms. Mortimer sells numerous original enamel pins, including the Moody Kitty Pin, shown below.  Copyright management information consisting of, *inter alia*, trade name, logo, and website address, is included on the pin's packaging.



37.     Plaintiff Eric Solomon is the artist behind the brand Felt Good Co. Mr. Solomon sells original patches, pins, clothing, bags, and other products through his website at www.feltgoodco.bigcartel.com and at various third-party websites and retailers.  Mr. Solomon sells numerous enamel pins, including his Donut Enamel Pin, shown below.  Copyright management information consisting of, *inter alia*, Mr. Solomon's trade name, logo, and website address, is included on the back of the pin and on the pin's packaging.



38.     Plaintiff Caitlin Whittington is one half of the artist team behind the brand Kate and Cait, which sells a wide range of patches and enamel pins through their website at www.shopkateandcait.com and through various third-party websites and retailers.   Ms. Whittington sells several original enamel pins, including the Banana Split Enamel Pin, shown

10

below.  Copyright management information consisting of, *inter alia*, Ms. Whittington's trade name and logo, is included on the back of the pin and on the pin's packaging.



39.     Plaintiff Beth Wilson is the artist behind the brand Doodlecats.  Ms. Wilson sells a wide range of jewelry, accessories, housewares, clothing, and other products through her website at www.doodlecatsshop.co.uk.   Ms. Wilson sells several original enamel pins, including the Orange Enamel Cat Pin and Pixie Enamel Cat Pin, both shown below.  Copyright management information consisting of, *inter alia*, Ms. Wilson's brand name, logo, and website address, is included on each pin's packaging.

 

40.     Plaintiff Katharine Wilson is the artist behind the brand The Good Twin.  Ms. Wilson sells original prints, cards, jewelry, enamel pins, and other products through her website at www.thegoodtwin.co and through numerous third-party websites and retailers throughout the United States.   Ms. Wilson sells dozens of enamel pins, including the Best Babes Pin + Post, shown below.  Copyright management information, consisting of, *inter alia*, Ms. Wilson's trade name, logo, and website address, is included on the pin's packaging.



41.     Plaintiff Artists created their websites and storefronts as a means of selling their original enamel pins and other products to consumers and wholesalers around the world.  This was done with the hope that revenue generated from the sales of their own original creations might be self-sustaining, and that their passion might also be their livelihood.  As demand for enamel pins has grown, Plaintiff Artists have increased their output to meet the growing demand of collectors and fans.

42.     Consumers of these highly collectible pins are discerning and well-informed about the pins and their creators.  The Original Pins feature distinctive, non-functional trade dress consisting of the pins themselves and the visual design and graphical elements of the pins (the "Pin Trade Dress").  Many of the Plaintiff Artists limit their pin offerings to a select few designs that are most reflective of their trademark style and aesthetic.

43.     Members of the consuming public have come to recognize these signature elements as belonging to the respective Plaintiff Artists.  The Pin Trade Dress of the Original Pins has developed secondary meaning, and the consuming public associates the Pin Trade Dress of the Original Pins with the respective Plaintiff Artists.

44.     Plaintiff Artists have developed successful enamel pin businesses not solely because of their creative designs, but also because the consuming public specifically seeks out pins created by Plaintiff Artists and recognizes these pins by their unique Pin Trade Dress.

45. Plaintiff Artists have spent substantial resources establishing their Pin Trade Dress and brands in the minds of the consuming public, and have continually grown the goodwill and reputation associated with the Original Pins and the Pin Trade Dress.

## II. Defendants' Unlawful, Fraudulent Scheme to Copy, Manufacture, and Import Infringing Accessories

46. As enamel pins have resurged in popularity, many national retailers seeking to capitalize on the broad market for pins have begun sourcing enamel pins to resell. Several of the Plaintiff Artists have been contacted by such national retailers and asked about supplying their enamel pins, including certain of the Original Pins, on a wholesale basis.

47. Rather than contract directly with the Plaintiff Artists, these national retailers decided instead to work with O.K. Originals and Orion and source cheap knockoff versions of the Original Pins and other infringing items through them.

48. In order to carry out this scheme, beginning in or around April 2016, on information and belief, employees of O.K. Originals and Orion created fake online accounts and personas, including on Etsy.com, and used them to purchase Original Pins directly from Plaintiff Artists and induce Plaintiff Artists to mail them the Original Pins. Due to a history of similar infringements, Plaintiff Artists have become wary of companies such as O.K. Originals and Orion that purchase pins in order to unlawfully copy them, and will refuse orders from such companies. Knowing this, O.K. Originals and Orion created fake online accounts and personas in order to hide the fact that they were purchasing samples of the Original Pins to copy.

49. Having surreptitiously obtained the Original Pins, O.K. Originals and Orion sent the Original Pins to their foreign manufacturers to create unlawful copies of the Original Pins and other infringing accessories (collectively, the "Infringing Products"). In doing so, O.K. Originals

and Orion intentionally removed copyright management information that Plaintiff Artists included on the Original Pins and on the packaging for the Original Pins.

50.     O.K. Originals and Orion then imported the Infringing Products and distributed them to national retailers, including Francesca's.  This unlawful scheme allowed Francesca's to obtain illegal copies of the Original Pins more cheaply than sourcing the actual Original Pins directly from Plaintiff Artists.  The sole purpose of this scheme was to steal from and unfairly compete with independent artists in order to unlawfully increase Defendants' profits.

51.     As part of this scheme, Defendants not only intentionally removed all traces of Plaintiff Artists' identifying information from both the Original Pins and their packaging, but also created new packaging for the Infringing Products that falsely identified Francesca's as the copyright holder.

52.     In addition to creating infringing enamel pins that copied the Original Pins, Defendants also created other infringing accessories, including keychains, based on the Original Pins.

## III.   Defendants' Willful Infringement and Unfair Competition

53.     Working with O.K. Originals and Orion as their distributors, Francesca's began marketing and selling the Infringing Products on its website and in its stores throughout the country.  On information and belief, the Infringing Products were popular items and profitable for Defendants.

54.     Defendants' infringement of the Original Pins was carefully orchestrated and entirely willful.  Defendants created infringing copies of the Original Pins and additional infringing accessories in order to unfairly compete with Plaintiff Artists by creating and selling cheap imported knockoffs. Francesca's posted images of the Infringing Products on its website and displayed the infringing copies of the Original Pins thereon.

55.     As is evident from a side-by-side comparison, the Infringing Products are uniformly of a much shoddier quality and craftsmanship than the Original Pins.  In addition, while the Original Pins are presented on tasteful, illustrated backing, which doubles as packaging, the Infringing Pins are often packaged in threes on nondescript cardboard and plastic backing.

56.     Francesca's employees have publicly admitted that the Infringing Products were intentionally copied from the Original Pins.  Defendants have willfully misappropriated Plaintiff Artists' labor, skill, and expenditures on the Original Pins and have done so intentionally and in bad faith.  Consumers viewing the Infringing Products are likely to be confused as to the origin of these goods, and are likely to mistakenly believe that Plaintiff Artists are somehow affiliated with or associated with these goods when in fact they are not.

57.     Defendants have unlawfully benefited from this willful infringement of, and unfair competition with, Plaintiff Artists.  Plaintiff Artists have been significantly damaged by these unlawful uses of the Original Pins, and they have been forced to file this Action in order to protect their rights and their livelihood.

58.     When Plaintiff Artists first discovered Defendants' unlawful scheme, several of them contacted Francesca's to notify them of the infringement.  An employee in Francesca's marketing department responded by email that Francesca's "respect[s] the designs of all artists" and that Francesca's was "contacting the vendor that sold us [the Infringing Products] to investigate and address this issue."  Minutes after sending this email, the same Francesca's employee unsuccessfully attempted to "recall" the email.  Despite continued and persistent attempts to contact Francesca's, Plaintiff Artists never again heard from Francesca's regarding the infringement, and Defendants' flagrantly willful infringement continued unabated.

59.     Subsequently, Plaintiff Artists launched a social media campaign to raise awareness of this corporate theft.  In response to this campaign, several employees of O.K. Originals and

Orion began responding with false information posted online using fake names and fake accounts. After receiving repeated notices of the infringement, Defendants not only failed to cease sales of the Infringing Products or even investigate the infringement, but they attempted to fraudulently divert attention from their unlawful scheme.

## FIRST CLAIM FOR RELIEF
## <u>COPYRIGHT INFRINGEMENT - 17 U.S.C. § 501, *et seq*.</u>
### (Against All Defendants)

60.     Plaintiff Artists repeat and reallege each and every allegation set forth in paragraphs 1 through 59 above, and incorporate them herein by this reference.

61.     Plaintiff Artists are the legal owners of all right, title, and interest in the Original Pins.  Plaintiff Artists are the legal owners of the copyrights in those works.

62.     Defendants have copied, reproduced, distributed, adapted, and/or publicly displayed the Original Pins and elements thereof without the consent, permission, or authority of Plaintiff Artists.

63.     Defendants' conduct constitutes infringement of Plaintiff Artists' copyrights and exclusive rights in violation of 17 U.S.C. §§ 106 and 501.

64.     Defendants' acts of infringement have been willful, intentional, purposeful, and in reckless disregard of and with indifference to the rights of Plaintiff Artists.

65.     As a result of Defendants' acts of copyright infringement as alleged herein, Plaintiff Artists have suffered and will continue to suffer damages in the United States and around the world in an amount yet to be determined.

66.     As a result of their infringement of Plaintiff Artists' copyright as alleged herein, Defendants are liable to Plaintiff Artists for the actual damages incurred by Plaintiff Artists as a result of the infringement, and for any profits of Defendants directly or indirectly attributable to such infringement.

67.     Defendants will continue to willfully infringe Plaintiff Artists' rights in the Original Pins unless restrained by the Court.  Plaintiff Artists are entitled to injunctive relief prohibiting further infringement, pursuant to 17 U.S.C. § 502.

**SECOND CLAIM FOR RELIEF**
**CONTRIBUTORY COPYRIGHT INFRINGEMENT - 17 U.S.C. § 501, *et seq*.**
**(Against All Defendants)**

68.     Plaintiff Artists repeat and reallege each and every allegation set forth in paragraphs 1 through 67 above, and incorporate them herein by this reference.

69.     Francesca's had actual or constructive knowledge that O.K. Originals and Orion were creating, importing, and distributing Infringing Products and indeed authorized, participated in, and benefited from this infringing activity.   Francesca's contracted with O.K. Originals and Orion and otherwise induced O.K. Originals and Orion to create, import, and distribute the Infringing Pins.

70.     Similarly, O.K. Originals and Orion had actual or constructive knowledge that Francesca's was marketing, promoting, and selling the Infringing Pins to consumers through Francesca's website and retail locations.  O.K. Originals and Orion contracted with Francesca's and supplied Francesca's with the Infringing Pins, and otherwise induced Francesca's to market, promote, and sell the Infringing Pins.

71.     As a result of Defendants' acts of copyright infringement as alleged herein, Plaintiff Artists have suffered and will continue to suffer damages in the United States and around the world in an amount yet to be determined.

72.     As a result of their infringement of Plaintiff Artists' copyright as alleged herein, Defendants are liable to Plaintiff Artists for the actual damages incurred by Plaintiff Artists as a result of the infringement, and for any profits of Defendants directly or indirectly attributable to such infringement.

73.     Defendants will continue to willfully infringe Plaintiff Artists' rights in the Original Pins unless restrained by the Court.  Plaintiff Artists are entitled to injunctive relief prohibiting further infringement, pursuant to 17 U.S.C. § 502.

### THIRD CLAIM FOR RELIEF
### REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION - 17 U.S.C. § 1202(b)
#### (Against All Defendants)

74.     Plaintiff Artists repeat and reallege each and every allegation set forth in paragraphs 1 through 73 above, and incorporate them herein by this reference.

75.     Plaintiff Artists' Original Pins include conspicuous copyright management information on the backs of the pins and/or on the pins' packaging, which is conveyed in connection with the pins and protected under 17 U.S.C. § 1202(b).

76.     In the process of unlawfully copying, reproducing, distributing, adapting, and/or publicly displaying the Infringing Products without the consent, permission, or authority of Plaintiff Artists, Defendants intentionally removed the copyright management information from the Original Pins.

77.     Defendants distributed and imported for distribution unauthorized copies of the Original Pins with the knowledge that copyright management information had been removed therefrom.

78.     Defendants intentionally removed the copyright management information and distributed and imported the Infringing Products with the knowledge that doing so would induce, enable, facilitate, or conceal an infringement of Plaintiff Artists' rights under the Copyright Act.

79.     Plaintiff Artists have been injured as a result of Defendants' violation of 17 U.S.C. § 1202(b) and are entitled to injunctive relief, impounding of the Infringing Products, damages, costs, and attorneys' fees.  Plaintiffs may also elect to recover statutory damages pursuant to 17

U.S.C. § 1203(c)(3) of up to $25,000 from each Defendant for each violation of 17 U.S.C. § 1202(b).

**FOURTH CLAIM FOR RELIEF**
**FALSE COPYRIGHT MANAGEMENT INFORMATION - 17 U.S.C. § 1202(a)**
**(Against All Defendants)**

80.     Plaintiff Artists repeat and reallege each and every allegation set forth in paragraphs 1 through 79 above, and incorporate them herein by this reference.

81.     Defendants knowingly provided false copyright management information in connection with the Infringing Products.  Specifically, Defendants prominently placed the "Francesca's" name on the packaging for the Infringing Products and on the website where the Infringing Products were sold.

82.     Defendants knowingly distributed and imported for distribution false copyright management information in connection with the Infringing Products.

83.     Defendants knowingly provided such false copyright management information and distributed and imported such false copyright management information in connection with the Infringing Products with the intent to induce, enable, facilitate, or conceal an infringement of Plaintiff Artists' rights under the Copyright Act.

84.     Plaintiff Artists have been injured as a result of Defendants' violation of 17 U.S.C. § 1202(a) and are entitled to injunctive relief, impounding of the Infringing Products, damages, costs, and attorneys' fees.  Plaintiffs may also elect to recover statutory damages pursuant to 17 U.S.C. § 1203(c)(3) of up to $25,000 from each Defendant for each violation of 17 U.S.C. § 1202(a).

**FIFTH CLAIM FOR RELIEF**
**UNFAIR COMPETITION – LANHAM ACT, 15 U.S.C. § 1125(a)**
**(Against All Defendants)**

85.     Plaintiff Artists repeat and reallege each and every allegation set forth in paragraphs 1 through 84 above, and incorporate them herein by this reference.

86.     Enamel pins are highly collectable and sought-after, and consumers of these pins are discerning and well-informed about the pins and their creators.  The Original Pins feature distinctive, non-functional trade dress consisting of the pins themselves and the visual design and graphical elements of the pins.  Many of the Plaintiff Artists offer only several pin designs, reflective of their trademark style and aesthetic.

87.     Members of the consuming public have come to recognize these signature elements as belonging to the respective Plaintiff Artists.  The Pin Trade Dress of the Original Pins has developed secondary meaning, and the consuming public associates the Pin Trade Dress of the Original Pins with the respective Plaintiff Artists.

88.     Plaintiff Artists have developed successful enamel pin businesses not solely because of their creative designs, but also because the consuming public seeks out pins created by Plaintiff Artists and recognizes these pins by their unique Pin Trade Dress.

89.     Plaintiff Artists have spent substantial resources establishing their Pin Trade Dress and brands in the minds of the consuming public, and have continually grown the goodwill and reputation associated with the Original Pins and the Pin Trade Dress.

90.     Defendants created, marketed, and sold in interstate commerce Infringing Products that are identical and near-identical copies of the Original Pins, including the Pin Trade Dress of the Original Pins.

91.     Defendants' use of the Original Pins and the Pin Trade Dress therein is intended to create and in fact does create the false and deceptive commercial impression that the Infringing

Products are associated with, affiliated with, or created by Plaintiff Artists, when in fact they are not. The use by Defendants of the signature elements in the Original Pins is likely to cause confusion or mistake as to the source of the goods.

92.     The Infringing Products are uniformly of a much shoddier quality and craftsmanship than the Original Pins. In addition, while the Original Pins are presented on tasteful, illustrated backing, which doubles as packaging, the Infringing Pins are often packaged in threes on nondescript cardboard and plastic backing. Defendants have also created and sold other products, such as key chains, based on the Original Pins. Plaintiff Artists have no control over the type or quality of the goods produced by Defendants, and such low-quality goods and derivative items will damage Plaintiff Artists' reputations.

93.     Through their conduct, Defendants have wrongfully appropriated the business and goodwill value that belongs to Plaintiff Artists and that Plaintiff Artists have invested significant amounts of time, money, and resources in developing.

94.     Defendants' unlicensed, nonconsensual, and otherwise unauthorized use of the Pin Trade Dress and Plaintiff Artists' graphical, thematic, and other source-identifying elements of the Original Pins constitutes a false representation that wrongly suggests to the trade, relevant purchasing public, and consumers at large that Plaintiff Artists are the source of Defendants' goods or endorse or approve of those goods.

95.     By reason of Defendants' acts of unfair competition as alleged herein, Plaintiff Artists have suffered and will continue to suffer substantial damage to their businesses in the form of diversion of trade, loss of profits, and a dilution in the value of their rights and reputation, all in amounts yet to be determined.

21

96.     By virtue of Defendants' acts hereinabove described, Defendants have committed, and are continuing to commit, unlawful, unfair, and fraudulent business acts in violation of, *inter alia*, 15 U.S.C. § 1125(a).

97.     Defendants' acts of unfair competition in violation of 15 U.S.C. § 1125(a) have caused, and will continue to cause, damage and irreparable harm to Plaintiff Artists (as described above) and are likely to continue unabated, thereby causing further damage and irreparable harm to Plaintiff Artists, and to the goodwill associated with Plaintiff Artists' valuable and well-known trade dress and Plaintiff Artists' business relationships, unless preliminarily and permanently enjoined and restrained by the Court.

98.     Plaintiff Artists have no adequate remedy at law and will suffer irreparable injury if Defendants are allowed to wrongfully continue the conduct herein described.

99.     In committing these acts of unfair competition, Defendants acted willfully, wantonly, recklessly, and with conscious disregard for Plaintiff Artists' rights.  Plaintiff Artists are therefore entitled to punitive damages.

## SIXTH CLAIM FOR RELIEF
## UNFAIR COMPETITION – N.Y. G.B.L. § 349
### (Against All Defendants)

100.    Plaintiff Artists repeat and reallege each and every allegation set forth in paragraphs 1 through 99 above, and incorporate them herein by this reference.

101.    Defendants' deceptive acts were directed at consumers and were intentionally misleading in a material way.  Consumers seeking the Original Pins are likely to be confused into believing the Infringing Products are genuine articles created by Plaintiff Artists when in fact they are not.  Consumers are likely to be confused into believing the Infringing Products are somehow associated with or endorsed by Plaintiff Artists when in fact they are not.

102.   By reason of Defendants' acts of unfair competition as alleged herein, Plaintiff Artists have suffered and will continue to suffer substantial damage to their businesses in the form of diversion of trade, loss of profits, and a dilution in the value of their rights and reputation, all in amounts yet to be determined.

103.   Plaintiff Artists have no adequate remedy at law and will suffer irreparable injury if Defendants are allowed to continue to wrongfully continue the conduct herein described.

104.   In committing these acts of unfair competition, Defendants acted willfully, wantonly, recklessly, and with conscious disregard for Plaintiff Artists' rights.  Plaintiff Artists are therefore entitled to punitive damages.

### SEVENTH CLAIM FOR RELIEF
### UNFAIR COMPETITION – COMMON LAW
### (Against All Defendants)

105.   Plaintiff Artists repeat and reallege each and every allegation set forth in paragraphs 1 through 104 above, and incorporate them herein by this reference.

106.   Defendants are selling infringing products that are identical and near-identical copies of the Original Pins.  Plaintiff Artists sell the Original Pins and license their artwork to others for use on accessories and other goods.

107.   In doing so, Defendants have willfully misappropriated Plaintiff Artists' labor, skill, and expenditures on their Original Pins, and have done so intentionally and in bad faith.

108.   The consuming public is likely to be confused as to the origin of the Infringing Products created, marketed, and sold by Defendants, incorrectly believing that those products are associated with or endorsed by Plaintiff Artists.  Defendants, in bad faith, intended to copy the Pin Trade Dress and misappropriate Plaintiff Artists' exclusive commercial advantage when they engaged in the unlawful conduct with respect to the Infringing Products.

Case 1:17-cv-00115-AJN   Document 1   Filed 01/06/17   Page 24 of 26

109.     As a result of Defendants' conduct, Plaintiff Artists have suffered substantial damages, as well as the continuing loss of goodwill and reputation established by them in the Pin Trade Dress.  This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Plaintiff Artists have no adequate remedy at law. Plaintiff Artists will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

**EIGHTH CLAIM FOR RELIEF**
**MAIL FRAUD – 18 U.S.C. § 1341**
**(Against O.K. Originals and Orion)**

110.     Plaintiff Artists repeat and reallege each and every allegation set forth in paragraphs 1 through 109 above, and incorporate them herein by this reference.

111.     Defendants O.K. Originals and Orion each knowingly and intentionally participated in a scheme to defraud Plaintiff Artists. O.K. Originals and Orion each used interstate mail in furtherance of this scheme.

112.     Plaintiff Artists have been injured as a result of O.K. Originals' and Orion's fraud and are entitled to compensatory and punitive damages in connection with this fraudulent conduct.

**NINTH CLAIM FOR RELIEF**
**WIRE FRAUD - 18 U.S.C. § 1343**
**(Against O.K. Originals and Orion)**

113.     Plaintiff Artists repeat and reallege each and every allegation set forth in paragraphs 1 through 112 above, and incorporate them herein by this reference.

114.     Defendants O.K. Originals and Orion each knowingly and intentionally participated in a scheme to defraud Plaintiff Artists. O.K. Originals and Orion each used wire and electronic transmissions in furtherance of this scheme.

115.     Plaintiff Artists have been injured as a result of O.K. Originals' and Orion's fraud and are entitled to compensatory and punitive damages in connection with this fraudulent conduct.

24

**WHEREFORE**, Plaintiff Artists demand judgment as follows:

1.      Awarding Plaintiff Artists their actual damages in connection with Defendants' willful copyright infringement, unfair competition with Plaintiff Artists, wire fraud, and mail fraud;

2.      Awarding Plaintiff Artists $25,000 per violation of 17 U.S.C. § 1202(a), ordering the impounding of the Infringing Products under 17 U.S.C. § 1203, and awarding Plaintiff Artists costs and attorneys' fees under 17 U.S.C. § 1203;

3.      Awarding Plaintiff Artists $25,000 per violation of 17 U.S.C. § 1202(b), ordering the impounding of the Infringing Products under 17 U.S.C. § 1203, and awarding Plaintiff Artists costs and attorneys' fees under 17 U.S.C. § 1203;

4.      Granting an injunction that permanently restrains and enjoins Defendants from copying, reproducing, distributing, adapting, and/or publicly displaying the Infringing Products or any unlawful copy of the Original Pins or the Pin Trade Dress;

5.      Awarding Plaintiff Artists punitive damages against Defendants in connection with their willful infringement, unfair competition, wire fraud, and mail fraud;

6.      Awarding Plaintiff Artists attorneys' fees and costs in connection with this Action under 17 U.S.C. § 1203;

7.      Awarding Plaintiff Artists such other and further relief as the Court may deem just and proper.

Dated:    New York, New York
           January 6, 2017

Respectfully Submitted,

KUSHNIRSKY GERBER PLLC

By: _____
Andrew Gerber (AG 0779)
Jordan Fletcher (JF 6161)
andrew@kgfirm.com
jordan@kgfirm.com

27 Union Square West, Suite 301
New York, NY 10003
(212) 882-1320

*Attorneys for Plaintiffs Sean Aaberg, Kristina Alderette, Brianna Bulski, Susan Ghahremani, Anita Ivancenko, Thais Marchese, Eleanor Mortimer, Eric Solomon, Caitlin Whittington, Beth Wilson, and Katharine Wilson*