UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



MAR 2 7 2018

Sean Aaberg, *et al.*,

    Plaintiffs,

  –v–

Francesca's Collections, Inc., *et al.*,

    Defendants.

17-CV-115 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

  Plaintiffs, a group of artists who create enamel pins, bring this lawsuit against certain

distributors and retailers of enamel pins they accuse of sourcing and selling "knock-offs" of the

Plaintiffs' designs. Defendants O.K. Originals, Ltd. and Express, LLC move to dismiss the

Second Amended Complaint for failure to state a cause of action under Federal Rule of Civil

Procedure 12(b)(6), and move to strike certain parts of the complaint under Rule 12(f).

Defendant Francesca's Collections, Inc. also moves to dismiss the Second Amended Complaint

under Rule 12(b)(6).

  For the following reasons, the Court GRANTS both motions to dismiss as to Plaintiffs'

claims under New York state law, but DENIES both motions to dismiss as to Plaintiffs' federal

law claims. The Court DENIES the motion to strike.

## I. Background

  On January 6, 2017, Plaintiff-Artists Sean Aaberg, Kristina Alderette, Brianna Bulski,

Susan Ghahremani, Anita Ivancenko, Thais Marchese, Eleanor Mortimer, Eric Solomon, Caitlin

Whittington, Beth Wilson, and Katharine Wilson (collectively, "Plaintiffs"), sued Defendants

Francesca's Collections, Inc ("Francesca's"), O.K. Originals, Ltd. ("OK"), Orion Fashions, Inc.

("Orion"), and Does 1-10, under the Copyright Act, Digital Millennium Copyright Act, Lanham

Act, and under New York state law. *See generally* Complaint, Dkt. No. 1. Plaintiffs also alleged

mail fraud and wire fraud against OK and Orion. *Id.* On February 16, 2017, Plaintiffs then

amended their complaint, adding Express, LLC and La Maison Simons, Inc. ("Simons") as

defendants. *See generally* First Amended Complaint, Dkt. No. 25. In response, OK and Express

(collectively, "OK-Express Defendants") moved to dismiss the First Amended Complaint and to

strike certain allegations. *See* Dkt. Nos. 31-32. Francesca's separately moved to dismiss as well.

*See* Dkt. Nos. 29-30. Orion answered, Dkt. No. 36, and Simons did not respond.

In response to the motions to dismiss, Plaintiffs sought leave to amend their complaint,

Dkt. No. 37, the Court granted that motion, Dkt. No. 41, and they filed the operative Second

Amended Complaint ("SAC") on March 6, 2017. Dkt. No. 43. The SAC no longer claimed a

violation of the Lanham Act. *See generally id.* In response, Francesca's and the OK-Express

Defendants (collectively, for the present purpose, "Defendants") renewed their respective

motions, *see* Dkt. Nos. 47-51, Orion again answered, Dkt. No. 61, and Simons still did not

appeared.

The Court provides the following summary of those allegations relevant to the present

motions. In deciding the motions to dismiss, the Court accepts the allegations as true and draws

all reasonable inferences in the Plaintiffs' favor. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*,

570 F.3d 471, 475 (2d Cir. 2009) (quotation omitted).

Plaintiffs are all artists who operate independently to create and sell enamel pins of their

own original design. SAC ¶ 2. Francesca's is a retail company that sells accessories, jewelry,

and clothing through its website and a nationwide chain of approximately 620 retail locations

throughout the United States. *Id.* ¶ 3. Express is a publicly-traded fashion retail company with approximately 650 stores in North America. *Id.* Simons is a Canadian retail company that sells clothing, accessories, and home furnishings through retail locations and its website, shipping products to the United States. *Id.* O.K. Originals mainly designs costume jewelry in New York, which it manufactures in Asia and then imports and distributes to retailer clients in the United States and around the world. *Id.* ¶ 30. Orion's business consists mainly of distributing "fashion jewelry." *Id.* ¶ 31.

Plaintiffs allege that Francesca's, Express, and Simons (collectively, "Retailers") sell enamel pins. *Id.* ¶ 4. The SAC alleges that rather than design their own or purchase or license designs directly from artists, the Retailers instead stole Plaintiffs' designs, contracting with OK and Orion, "both known distributors of knockoff and copycat goods," to supply them with infringing copies of Plaintiffs' pins. *Id.* All of the allegedly infringing pins were sold by Francesca's and some of them are alleged to have been sold by Express and Simons as well. *Id.* ¶¶ 4-5.

All Plaintiffs except Ivancenko and Katharine Wilson have received registrations for their pins from the U.S. Copyright Office. *Id.* ¶ 28 & Ex. A. Ivancenko and Wilson have submitted proper deposits, applications, and applications fees for their works to the U.S. Copyright Office and were refused registration. *Id.* ¶ 28. Notice of this action and the complaints have been served upon the Register of Copyrights. *Id.*

In the interest of brevity, the Court simply notes that each Plaintiff is associated with one or more specific pins alleged to have been infringed. *See id.* ¶¶ 36-46. Each artist sells their pins and other products either through his or her website, through e-commerce platforms such as on Etsy, and/or through third-party websites and retailers. *Id.* Each artist's name or trade name, as

3

well as his or her logo or website, is placed on the pin's packaging (and, in some cases, on the pin itself) "via a digital and technological process involving computer software and printing machinery" and serves to identify each artist as the author and copyright owner of the pin. *Id.*

Plaintiffs allege that beginning around February 2016, employees of OK and Orion purchased pins directly from Plaintiffs to obtain samples that they could then copy, have manufactured in Asia, and import for distribution to the Retailers. *Id.* ¶ 56. Specifically, Plaintiffs allege that Jennifer Perdigao, design director for OK, and Jessalyn Valvo, Orion's creative director, purchased pins from various Plaintiffs' storefronts. *Id.* ¶¶ 57-60. OK and Orion then sent the original pins to their foreign manufacturers to create the allegedly infringing pins. *Id.* ¶ 61. When these infringing pins were later displayed by the Retailers, the information identifying the Plaintiffs as authors and copyright owners had been removed and replaced with new, false information. *Id.*

According to Plaintiffs, the Defendants began selling the infringing pins in or about summer 2016 and Francesca's and Express were still selling at least some of them as of the filing of the SAC. *Id.* ¶¶ 65-66. Plaintiffs plead stories of a few of the artists notifying Francesca's about the alleged infringement in or about August 2016. *Id.* ¶¶ 70-71

Based on these allegations, Plaintiffs contend that Defendants have committed direct and contributory copyright infringement in violation of 17 U.S.C. §§ 106 and 501 (Copyright Act), *id.* ¶¶ 75-88, unlawfully removed copyright management information from the pins, and unlawfully provided false copyright management information in connection with the pins in violation of 17 U.S.C. § 1202(b) and § 1202(a) respectively (Digital Millennium Copyright Act, or "DMCA"), *id.* ¶¶ 89-102, and engaged in deceptive acts and practices directed at consumers in New York in violation of General Business Law § 349, and common law unfair competition.

4

*Id.* ¶¶ 103-11. Plaintiffs seek actual damages, statutory damages, Defendants' profits, the impounding of the infringing pins, costs and attorneys' fees, treble damages, and injunctive relief. *Id.* ¶ 111.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim achieves "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Assessing the plausibility of a complaint is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. To plausibly allege a claim, the plaintiff must do more than provide "bare assertions" that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim. *Id.* at 681 (quoting *Twombly*, 550 U.S. at 555). "The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). In reviewing a motion to dismiss, the court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

## III. Discussion

### A. Direct Copyright Infringement Claim (First Claim for Relief)

"A properly plead[ed] copyright infringement claim must allege 1) which specific original works are the subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) by what acts during what time the defendant infringed the copyright." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992); *accord Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 352 (S.D.N.Y. 2014).

As a threshold matter, the OK-Express Defendants argue that Plaintiffs' pins are not sufficiently "original" to merit copyright protection. Defendant O.K. Originals, Ltd. and Defendant Express, LLC's Memorandum of Law in Support of Their Rule 12 Motion to Dismiss the Second Amended Complaint ("OK Mem."), Dkt. No. 49, at 9-10. Their argument is especially directed at two of the eleven Plaintiffs, Ivanchenko and Katherine Wilson, as the OK-Express Defendants imply that the reason both were refused registration of their pins by the Copyright Office was for lack of originality. *See id.* at 9. However the OK-Express Defendants also invite the Court to "find that the remaining Plaintiffs' pins also lack the minimum level of creativity required for copyright protection," despite their receipt of registration certificates. *Id.* at 10.

"To qualify for copyright protection, a work must be original to the author." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991). The threshold for originality is exceedingly low. "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that is possesses at least some minimal degree of creativity." *Id.* at 345. "The vast majority of works

made the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." *Id.* (internal quotation marks and citation omitted).

The OK-Express Defendants argue that Ivanchenko and K. Wilson's pins, a pastel color strawberry and a broken heart with the words "Best Babes," respectively, are garden variety symbols that are not original. OK Mem. at 9. Drawing all reasonable inferences in the Plaintiffs' favor, the Court finds that both plausibly allege the originality of their pins.

Ivanchenko's Pastel Strawberry pin is slanted in orientation and light blue and pale pink in color, which are not the colors found on strawberries in nature. SAC ¶ 40. Wilson's Best Babes Pin + Post may use the common symbol of a heart broken in two, but also employs a distinctive color scheme – black and gold – and the counterintuitive nature of writing "best babes" in cursive over a broken heart. SAC ¶ 46. Given the low threshold needed to plausibly allege originality, the creative elements of both pins are sufficient to avoid dismissal on these grounds.

Moreover, while the OK-Express Defendants are correct that the existence of copyright registration certificates for the other pins at issue is not dispositive of this threshold question of originality, *see* OK Mem. at 10 (citing *We Shall Overcome Found. v. Richmond Org., Inc. (TRO Inc.)*, No. 16-CV-2725 (DLC), 2016 WL 6871427, at *6 (S.D.N.Y. Nov. 21, 2016)), it does constitute *prima facie* evidence of the validity of the copyright. 17 U.S.C. § 410(c). Upon reviewing the remaining pins, and drawing all reasonable inferences in Plaintiffs' favor, the Court concludes that there is no subject pin so thoroughly devoid of a "creative spark" that the complaint falls to plausibly allege their protection under copyright law. *See* SAC ¶ 4.

The OK-Express Defendants next criticize Plaintiffs' pleading of the copyright infringement claims as insufficiently specific under the pleadings standards of Federal Rule of

Civil Procedure 8(a)(2). OK Mem. at 10-12. Specifically, they argue that Plaintiffs have failed to properly plead the fourth element of copyright infringement: "by what acts during what time the defendant infringed the copyright." *Kelly*, 145 F.R.D. at 36. The OK-Express Defendants focus on two purported failures.

First, the OK-Express Defendants criticize Plaintiffs for making allegations that "lump together" all of the Defendants and all of the pins, without giving specific notice to each defendant of what conduct infringes which pins. OK Mem. at 11-12, 23. They concede that Plaintiffs do link OK and Express with certain pins, but argue that the Court should dismiss the claims of those plaintiffs whose pins are not specifically linked to OK or Express in the complaint. *Id.* at 12. Francesca's raises a similar argument, but focuses its attention on Plaintiffs' purported failure to plead a time period for the infringement. Memorandum of Law in Support of Defendant Francesca's Collections Inc's Motion to Dismiss Second Amended Complaint ("Francesca's Mem.), Dkt. No. 51, at 6-7.

At this stage, Plaintiffs offer enough specificity to provide sufficient notice to OK and Express. Rule 8(a)(2) requires "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what...the claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs have identified 13 specific pins, and set forth their theory of how exactly each Defendant is potentially liable for infringement, and in what timeframe. *See* SAC ¶¶ 4, 5, 53-61, 64-66, 73. Moreover, Plaintiffs plead that as of the filing of the SAC, Francesca's was still displaying images of seven pins on its website. SAC ¶ 66. Alleging a continuing violation has repeatedly been found to fulfill the pleading requirements for a copyright claim. *See Maverick Recording Co. v. Goldshteyn*, No. 05-CV-4523 (DGT), 2006 WL 2166870, at *4

(E.D.N.Y. July 31, 2006) (collecting cases). It is true that Plaintiffs have only pleaded additional details about Express and Simons with respect to certain pins, that is, the Cat Lady Pin and the Pizza True Love and Best Babes pins respectively, and otherwise use the phrases "at a minimum," or "at least," to cast a wider net. *See, e.g.*, SAC ¶¶ 5, 65. It is similarly true that there are points at which Plaintiffs' complaint contradicts itself on time. *See* Francesca's Mem. at 6 (citing SAC ¶¶ 65, 73 and noting that Plaintiffs plead both that Francesca's began selling all of the infringing pins in or about July 2016 and that Francesca's did not begin selling the Cat Lady Keychain until September 2016). Nonetheless, Plaintiffs have offered a limited scope of time for the alleged infringement, and a limited number of pins that were potentially infringed.[1] To the extent that Plaintiffs are not aware of the full scope of Defendants' activities, much of the information exists principally within the Defendants' possession and control. *See* SAC ¶¶ 52, 60. Whatever its flaws, the SAC gives Defendants ample notice and plausibly states a claim for infringement.

Second, the OK-Express Defendants attack the plausibility of the pleading because it fails to account for why competing suppliers – OK and Orion – and competing retailers – Francesca's, Express, and Simons – would have undertaken the same scheme. OK Mem. at 12. However, this explanation is not required for Plaintiffs to plausibly state a claim for copyright infringement. At no point do the Plaintiffs allege that OK and Orion, or Express and Francesca's, collaborated with each other. Rather, both supplier-distributors are alleged to have independently produced "knock-offs" for both retailers. *See* SAC ¶ 63. It is not implausible that multiple Defendants might be independently liable for the same allegedly infringing behavior.

---

[1] To the extent Plaintiffs attempt to assert claims beyond these thirteen pins and beyond the scope of time alleged in the SAC, these claims are dismissed. *Cf. Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 616-18 & n. 2 (S.D.N.Y. 2013) (finding the pleadings sufficient to place the defendant on notice, but dismissing the complaint to the extent it asserts claims regarding unspecified photographs).

Accordingly, the Court denies Defendants' motion to dismiss Count 1.

## B. Contributory Copyright Infringement Claim (Second Claim for Relief)

Francesca's also argues that Plaintiffs failed to adequately plead the elements of their

claim for contributory infringement. Francesca's Mem. at 3-5. "A defendant may be held liable

for contributory copyright infringement if, 'with *knowledge* of the infringing activity,' it

'materially contributes to the infringing conduct of another.'" *Arista Records LLC v. Lime Grp.*

*LLC*, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011) (quoting *Matthew Bender & Co., Inc. v. W.*

*Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998)) (emphasis added). "The knowledge standard is an

objective one; contributory infringement liability is imposed on persons who 'know *or have*

*reason to know*' of the direct infringement." *Doe 3*, 604 F.3d at 118 (emphasis in original;

citation omitted). Francesca's argues that Plaintiffs fail to allege knowledge with sufficient

specificity, noting that only four of the Plaintiffs are alleged to have notified Francesca's of the

potential infringement, and that only one of these four Plaintiffs created a pin alleged to have still

been sold by Francesca's after this notice. *See* Francesca's Mem. at 3-5 (citing SAC ¶¶ 70-71,

73-74).

Francesca's assumes that Plaintiffs carry the burden of providing a pin-by-pin accounting

in order to adequately plead the knowledge element, but cite no relevant law in support of this

assumption.[2] In pleading their claims against Francesca's, Plaintiffs have alleged that the

---

[2] In its reply brief, Francesca's cites two out-of-Circuit cases arising under the Robinson-Patman Act for
the proposition that each plaintiff must make individual allegations. *See* Reply Memorandum of Law in Further
Support of Defendant Francesca's Collections Inc.'s Motion to Dismiss Second Amended Complaint, Dkt. No. 64,
at 3 (citing *Chawla v. Shell Oil Co.*, 75 F. Supp. 2d 626, 654 (S.D. Tex. 1999) and *S. Gas, Inc. v. ExxonMobil Oil
Corp.*, 09-CV-6236, 2016 WL 816748, at *6 (D.N.J. Feb. 29, 2016)). To state a claim under Robinson-Patman Act
requires allegations that price discrimination had a prohibited effect on competition, and Plaintiffs in a "secondary-
line case" must specifically plead competitive harm and cannot rely on a generalized inference. *See Chawla*, 75 F.
Supp. 2d at 651-53. In short, Francesca's offers no *apposite* citation supporting its position that Plaintiffs must
plead copyright infringement pin-by-pin under Rule 8.

Retailers "sourced pins from the Supplier Defendants rather than going directly to the Plaintiff Artists because they *knew* the Supplier Defendants provided cheaper, knock-off goods manufactured in Asia." SAC ¶ 63 (emphasis added). While Plaintiffs may ultimately not find the evidence to support this claim, the scheme they have alleged is plausibly predicated on Francesca's actual or constructive knowledge that the pins they were sourcing from these particular suppliers were likely infringing.

Accordingly, the Court denies Defendants' motion to dismiss Count 2.

## C. Digital Millennium Copyright Act Claims (Third and Fourth Claims for Relief)

Plaintiffs' third cause of action is for alleged removal of copyright management information under 17 U.S.C. § 1202(b), and their fourth cause of action is for the alleged provision of false copyright management information under 17 U.S.C. § 1202(a).

The DMCA makes it unlawful to knowingly, and with the intent to "induce, enable, facilitate, or conceal infringement," either "provide" or "distribute" (or "import for distribution") false "copyright management information" or "CMI." 17 U.S.C. § 1202(a). Thus, to state a claim under this subsection, § 1202(a), Plaintiffs must allege that the defendant both knew that the CMI was false, and provided or distributed the false CMI with the intent to induce, enable, facilitate, or conceal infringement. See *Ward v. Nat'l Geographic Soc'y*, 208 F. Supp. 2d 429, 449 (S.D.N.Y. 2002).

The DMCA also prohibits doing any of the following "without the authority of the copyright owner or the law" and with knowledge or reasonable grounds to know that it will "induce, enable, facilitate, or conceal" infringement:

(1) intentionally remove or alter any copyright management information,
(2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or

11

(3) distribute ... works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law.

17 U.S.C. § 1202(b).

Accordingly, to state a valid claim under subsection 1202(b), a plaintiff must allege 1) the existence of CMI on the products at issue; 2) removal and/or alteration of that information; and 3) that the removal and/or alteration was done intentionally. *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010) (collecting cases).

As relevant here, the statutory definition of CMI includes: 1) "[t]he name of, and other identifying information about, the author of a work," § 1202(c)(2); 2) "[t]he name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright," § 1202(c)(3); and 3) "[i]dentifying numbers or symbols referring to such information or links to such information." § 1202(c)(7).

The OK-Express Defendants argue that Plaintiffs fail to state a claim under either subsection of the statute for three separate reasons. First, they assert that virtually none of the pins contains "copyright management information" or CMI, as statutorily defined by 17 U.S.C. § 1202(c). OK Mem. at 13-14. Second, they argue that because none of the alleged infringing conduct occurred in the *digital* sphere, and, rather, all occurred in the *physical* sphere, Plaintiffs cannot adequately plead a DMCA claim. *Id.* at 15-16. Third, the OK-Express Defendants contend that Plaintiffs have failed to state a viable cause of action because they do not plausibly allege that OK or Express "removed or altered" any CMI from *Plaintiffs'* own products or packaging, instead alleging that they made new and separate pins and packaging without the CMI. *Id.* at 17. Finally, Francesca's asserts a separate, fourth basis for dismissal. The Court addresses these arguments in turn.

12

First, the OK-Express Defendants assert that virtually none of the pins contains "copyright management information" as statutorily defined by 17 U.S.C. § 1202(c). Specifically, OK-Express Defendants note that only two pins allegedly contain the Plaintiff's name (Plaintiffs Alderette and Ghahremani) and argue that *trade* names, logos, website addresses, or social media handles do not meet the statutory definition of CMI. *See* OK Mem. at 14 (citing SAC ¶¶ 36-46). OK-Express Defendants insist that the conjunctive word "and" connecting "the name of" to "other identifying information about" in the text of statute means that the name of the author or copyright owner is still required in order to qualify as CMI, and "other identifying information" may *supplement* the name, but does not suffice in its absence. *Id.* at 14-15.

Plaintiffs respond that not only is OK-Express Defendants' interpretation of § 1202(c)(2) and (c)(3) incorrect as a matter of law, but also that logos, website addresses, and social media handles qualify under subsection (c)(7) as "[i]dentifying numbers or symbols...or links to such information." Plaintiff Artists' Consolidated Memorandum of Law in Opposition to the Motions of (1) Defendants O.K. Originals, Ltd. and Express, LLC, and (2) Defendant Francesca's Collections, Inc. to Dismiss the Second Amended Complaint ("Opp."), Dkt. No. 60, at 18-19.

Plaintiffs have the better argument. The OK-Express Defendants offer no legal support for their narrow view of § 1202(c). Plaintiffs plead that each pin has some combination of a trade or brand name, a logo, and a website address. *See* SAC ¶¶ 36-46. Collectively, this information is sufficient to identify the copyright owning Plaintiff. *See GC2 Inc. v. Int'l Game Tech. PLC*, 255 F. Supp. 3d 812, 822 (N.D. Ill. 2017) ("[T]rademark information [such as a trademark logo] may constitute CMI if it is used to signal authorship of a copyrighted work..."); *Fischer v. Forrest*, No. 14-CV-1304 (PAE), 2018 WL 948758, at *12 (S.D.N.Y. Feb. 16, 2018)

(finding that CMI "need not exactly match the name of the copyright owner"). The OK-Express Defendants read too much into the use of the conjunctive "and" in § 1202(c)(2) & (c)(3). Numerous courts have taken a broad view of what constitutes CMI. *See, e.g., Williams v. Cavalli*, No. 14-CV-6659, 2015 WL 1247065, at *2 (C.D. Cal. Feb. 12, 2015) (finding pseudonymous signatures are CMI); *Aardwolf Indus., LLC v. Abaco Machs. USA, Inc.*, No. 16-CV-1968, 2016 WL 9275401, at *4 (C.D. Cal. Nov. 21, 2016) (finding a collective logo, copyright symbol, and design mark sufficient CMI); *Goldstein v. Metro. Reg'l Info. Sys., Inc.*, No. 15-CV-2400, 2016 WL 4257457, at *8 (D. Md. Aug. 11, 2016) (finding that a mark consisting of a copyright symbol and website address meets the definition of CMI in § 1202(c)(3)). "[T]he point of CMI is to inform the public that something is copyrighted and to prevent infringement." *Pers. Keepsakes, Inc. v. Personalizationmall.com*, No. 11-CV-5177, 2012 WL 414803, at *6 (N.D. Ill. Feb. 8, 2012). This broader view is confirmed by the Senate Report on the DMCA, which defines CMI to include "such items as the title of the work, the author, the copyright owner, and in some instances, the writer, performer and director." *See* S. Rep. No. 105-190, at 16 (1998). The OK-Express Defendants offer no contrary case law and the Court finds that the information included with the pins qualifies as CMI under either § 1202(c)(3) or § 1202(c)(7).

The OK-Express Defendants' second and third arguments are closely related to each other. Essentially, both arguments focus on whether the DMCA is meant to reach conduct like that alleged here – namely, where defendants take the physical product and packaging of plaintiffs and reproduce them without the original CMI.

The parties' arguments reflect a split among the courts to have considered this question. The OK-Express Defendants rely heavily on *Textile Secrets, Int'l, Inc. v. Ya-Ya Brand*, which

held that § 1202 was not "intended to apply to circumstances that have no relation to the Internet, electronic commerce, automated copyright protections or management systems, public registers, or other technological measures or processes as contemplated by the DMCA as a whole." 524 F. Supp. 2d 1184, 1201 (C.D. Cal. 2007). However, this narrow understanding is likely the minority position now, as myriad other courts tasked with considering the proper scope of the DMCA have not limited it in this way. *See, e.g., Assoc. Press v. All Headline News Corp.*, 608 F. Supp. 2d 454, 462 (S.D.N.Y. 2009); *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 300-05 (3d Cir. 2011); *Interplan Architect, Inc. v. C.L. Thomas, Inc.*, No. 08-CV-3181, 2009 WL 6443117, at *5 (S.D. Tex. Nov. 13, 2009); *Fox v. Hildebrand*, 2009 WL 1977996, at *2-3 (C.D. Cal. 2009); *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098, 1101 (N.D. Ill. 2014); *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 306 (S.D.N.Y. 2011); *Williams*, 2015 WL 1247065, at *3; *Logan Developers, Inc. v. Heritage Bldgs., Inc.*, No. 12-CV-323, 2013 WL 5460757, at *9 (E.D.N.C. Sept. 30, 2013). Rather, those courts have reasoned that there is no reason "to resort to legislative history to cloud a statutory text," when a "statute's language is clear." *Assoc. Press*, 608 F. Supp. 2d at 461-62 (quotation omitted). The text of §§ 1202(a) or (b) does not include the words "internet," "e-commerce," "technological," "automated," "process," or "system," or any other word or phrase that would suggest that the removal or alteration of CMI, or provision of false CMI, must be accomplished in a specific way.

A similar divide may be developing between those courts that conclude that the DMCA requires a showing that the CMI was removed from the plaintiff's work itself, *see Faulkner Press, LLC v. Class Notes, LLC*, 756 F. Supp. 2d 1352, 1359-60 (N.D. Fla. 2010) (dismissing a DMCA claim at summary judgment because information was "allegedly copied into a different form and then incorporated into the note packages" instead of being removed or altered "from

the copyrighted works"), and those which have allowed a claim to proceed with allegations that CMI was recreated anew. *See Assoc. Press*, 608 F. Supp. 2d at 457-58, 462 (finding DMCA sufficiently alleged where defendant re-wrote *or* copied plaintiff's news stories and published them on a separate news service).

The Court need not decide this question at this early juncture, because even if the Court were to adopt the narrower view of the DMCA, and require Plaintiffs to have *both* plausibly alleged that the CMI was removed or altered through a technological process *and* that the CMI was removed or altered from Plaintiffs' actual products, and not just left off of a new creation, dismissal would still not be warranted. Plaintiffs are silent on exactly how the Defendants allegedly removed the CMI. Plaintiffs plead only that "O.K. Originals and Orion sent the Original Pins to their foreign manufacturers," and that "when the Infringing Products returned from the foreign manufacturers...the Plaintiff Artists' copyright management information had been completely removed." SAC ¶ 61. While "[i]t is impossible to ascertain at this stage of the litigation...when and how the removal was accomplished," on a motion to dismiss, "Rule 8 does not require certainty; it requires plausibility." *Greg Young Publ'g, Inc. v. CafePress, Inc.*, No. 15-CV-6013, 2016 WL 6106752, at *4 (C.D. Cal. Jan. 25, 2016). On a motion to dismiss, the Court must draw all reasonable inferences in Plaintiffs' favor. *LaFaro*, 570 F.3d at 475. While no images of the allegedly infringing packaging have been provided to the Court, it is reasonable to infer based on Plaintiffs' allegations that these foreign manufacturers may have used a technological process to replicate the pins and packaging without Plaintiffs' CMI, rather than creating the products entirely anew based merely on "inspiration" from the samples. Consequently, drawing this inference in Plaintiffs' favor, under either party's proposed legal standard, the Court finds that the SAC plausibly alleges a violation of § 1202. The Court's

conclusion at this stage in the litigation carries no prejudice for Defendants to make a similar legal argument following discovery should the evidence ultimately demonstrate otherwise.

Finally, Francesca's argues that Plaintiffs' fail to adequately state their DMCA claim because they do not allege that Francesca's knew about the CMI information on the pins, nor that it knew the distributors had removed or altered the CMI from the Plaintiffs' pins. Francesca's Mem. at 5. The Second Circuit has stated that courts should be lenient in allowing scienter issues to survive motions to dismiss. *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 693 (2d Cir. 2009). Here, the SAC alleges that certain Plaintiffs contacted Francesca's with complaints of infringement, and that Francesca's continued to sell infringing products nonetheless. *See* SAC ¶¶ 70-71, 73 (alleging that Ghahremani sent a cease-and-desist letter to Francesca's and communicated with Francesca's on social media and that Alderette, B. Wilson, and K. Wilson also notified Francesca's of their infringement claims). Similar allegations were sufficient to establish the knowledge element of the DMCA claims in other cases. *See, e.g.*, *Fischer v. Forrest*, No. 14-CV-1304 (PAE), 2015 WL 195822, at \*9 (S.D.N.Y. Jan. 13, 2015) (finding plausible inference of intentionality given that defendant continued conduct after receiving cease-and-desist letter); *Agence France*, 769 F. Supp. 2d at 306 (finding sufficient allegations that defendants continue to distribute infringing photos despite plaintiff's instruction to change the photo credit); *Goldstein*, 2016 WL 4257457, at \*8 (finding that scienter may be pleaded generally and that defendant's continued behavior despite actual knowledge sufficed). The allegations of knowledge here are sufficient to survive a motion to dismiss as well.

Accordingly, for the reasons stated above, the Court finds that Plaintiffs adequately state a claim under both § 1202(a) and § 1202(b).

**D. New York Law Claims (Fifth and Sixth Claims for Relief)**

Plaintiffs' fifth claim for relief alleges that Defendants engaged in deceptive acts and practices in violation of New York's General Business Law § 349. To state a claim under GBL § 349, a plaintiff must demonstrate that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). Defendants argue that Plaintiffs' claim is preempted by the Copyright Act, which exclusively governs claims that seek "to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law," with respect to works protected by the Act. *See* OK Mem. at 18 (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004)). Plaintiffs argue that their claim under § 349 is not preempted because as a "passing off" claim, its focus is on the deceptive effect on consumers, and so is qualitatively different than what is protected by the Copyright Act. *See* Opp. at 26-27. Plaintiffs are correct that if the nature of the rights asserted under GBL § 349 is that of consumer deception, the claim may not be preempted. *We Shall Overcome Found.*, 2016 WL 6871427, at *10. However, if that is the nature of Plaintiffs' claim, they have not adequately stated it.

It is well settled that for a corporate competitor to establish a *prima facie* case for deceptive trade practices under § 349, "the gravamen of the complaint must be consumer injury or harm to the public interest." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003) (quotations omitted). "Courts routinely reject ... attempts to fashion Section 349 ... claims from garden variety disputes between competitors" where the gravamen of the complaint is harm to another business. *Winner Int'l v. Kryptonite Corp.*, No. 95-CV-247 (KMW), 1996 WL 84476, at *3 (S.D.N.Y. Feb. 27, 1996). Here, Plaintiffs allege in a conclusory

manner that consumers are "discerning and well-informed about the pins and their creators" and "are likely to be confused as to the origin of these goods, and are likely to mistakenly believe that Plaintiff Artists are somehow affiliated with or associated with these goods when in fact they are not." SAC ¶¶ 48, 68. Plaintiffs offer no examples of any consumers who were confused.

Rather, what Plaintiffs truly allege would be properly called "reverse passing off" under the Lanham Act, an element of which is that "the origin of the work was falsely designated by the defendant." *See Nat'l Lighting Co. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556, 564 (S.D.N.Y. 2009). Plaintiffs dropped their false designation claim under the Lanham Act when amending their complaint in response to Defendants' first motions to dismiss for good reason: The crux of Plaintiffs' complaint is that the Retailers altered the packaging to sell it under their *own* name, not that of Plaintiffs. *See* SAC ¶ 109 (alleging Defendants to have "deceive[d] customers into believing that Defendants were the authors of the pin designs"). Ultimately, the claim fails to adequately allege consumer confusion.

Plaintiffs' sixth cause of action is for unfair competition under New York state common law. Plaintiffs fail to adequate state this claim for the same reasons their claim under GBL § 349 falls – namely, the claim is either preempted or inadequately pled. An unfair competition claim may avoid preemption if predicated on a theory of "passing off" or "reverse passing off." *WNET v. Aereo, Inc.*, 871 F. Supp. 2d 281, 288 (S.D.N.Y. 2012) (Nathan, J.). However, the standards for false designation of origin claims under the Lanham Act and unfair competition claims under New York law are virtually the same. *Kregos v. Assoc. Press*, 795 F. Supp. 1325, 1336 (S.D.N.Y. 1992). As discussed above, Plaintiffs do not adequately allege false designation because they do not adequately support claims of consumer confusion. The "mere reproduction" of Plaintiffs' designs *could* support an unfair competition claim for false designation of

19

ownership, *id.* at 1337, but their failure to adequately allege that the public is likely to be confused is determinative.

Accordingly, the Court grants Defendants' motions to dismiss Plaintiffs' state law claims.

### E. Motion to Strike

OK-Express Defendants also move to strike as impertinent and scandalous portions of the complaint that allege that OK is a "known distributor[] of knockoff and copyright goods" and a "known infringer" respectively. OK Mem. at 21 (citing SAC ¶¶ 4, 73). They argue that the allegations "unnecessarily reflect upon OK's alleged moral character" and would be inadmissible at trial. *Id.*

Under Rule 12(f) of the Federal Rules of Civil Procedure, "[t]he court may strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." However, it is clear in the Second Circuit that motions to strike are generally disfavored. "[C]ourts should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). It is well settled that courts should deny motions to strike material from the pleadings "unless it can be shown that no evidence in support of the allegation would be admissible." *Id.* Given these parameters, "[t]o prevail on a motion to strike, the defendant must show that: (1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant." *Hargett v. Metro. Transit Auth.*, 552 F. Supp. 2d 393, 404 (S.D.N.Y. 2008) (quotations omitted).

Plaintiffs correctly respond that the allegations bear directly on the scienter elements of Plaintiffs' contributory infringement and DMCA claims. Opp. at 30. While a bare allegation of bad character might be inadmissible, the Court cannot say at this juncture that Plaintiffs would be

unable to generate evidence to support this claim, such as evidence of OK's reputation within the industry or evidence of prior infringements. Accordingly, and in light of the high standard that governs motions to strike portions of the pleadings, the Court denies the OK-Express Defendants' motion. *Cf. Finch v. Xavier Univ.*, No. 07-CV-987, 2008 WL 11351334 (S.D. Ohio Mar. 20, 2008) (denying a motion to strike an allegation that a man was "known for his sexist views" in Title IX case); *Nelson v. Banks*, No. 15-CV-605, 2016 WL 5496406, at *11-12 (E.D. Ark. Sept. 28, 2016) (denying motion to strike allegation that man was "known racist" in employment discrimination case).

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' motions to dismiss as to the state law claims (Five and Six), but DENIES Defendants' motions to dismiss as to the Copyright and DMCA claims (One, Two, Three, and Four). The Court DENIES the OK-Express Defendants' motion to strike.

This Order resolves Dkt. Nos. 47 & 66. The Court will schedule an initial pretrial conference by separate order.

SO ORDERED.

Dated: March 2 7, 2018
       New York, New York

ALISON J. NATHAN
United States District Judge

21